UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| WHOLESALE SCREENING SOLUTIONS LLC, <br><br> PLAINTIFF, <br><br> v. <br><br> CRIMINAL RESEARCH AND INVESTIGATIONS, INC., LAUREN ZULUAGA, STACI LAIRD ZULUAGA, AND DEBRA KELLER <br><br> DEFENDANTS. | CAUSE NO. 3:20-cv-158 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Wholesale Screening Solutions LLC (hereinafter "WSS"), for its complaint against the Defendants, alleges as follows.

### Description of the Case

1. The Defendants engaged in a concerted scheme to illegally promote their own businesses and personal interests at the expense of WSS and its customer Reference Services, Inc. ("RSI"). The Defendants' conduct violated state and federal law.

2. WSS seeks redress for the wrongs committed against it in the following causes of action: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violation of the Robinson-Patman Act ("RPA"); (3) tortious interference; and (4) unfair competition.

## Parties or Participants

3. Plaintiff WSS, is a Virginia limited liability company with its principal place of business in Purcellville, Virginia.

4. WSS researches information in public records and sells that information to background screening companies. WSS sold such information to RSI, an Indiana corporation.

5. Lowers Risk Group LLC, a Virginia limited liability company also located in Purcellville, Va., is the sole member of WSS. Individuals who are members of Lowers Risk Group, not all of whom are active or voting members, are citizens of Florida, Georgia, Illinois, Indiana, Tennessee, Virginia, West Virginia, and the United Kingdom.

6. The relevant schemes described herein involved at least the following individuals or entities:

 (a) Defendant Criminal Research and Investigations, Inc. ("CRI");

 (b) Total Insight Services, Inc. ("TIS");

 (c) Defendant Lauren Zuluaga ("Zuluaga");

 (d) Defendant Staci Laird Zuluaga ("Laird");

 (e) Defendant Debra Keller ("Keller");

 (f) Brandi Hilborn ("Hilborn"); and

 (g) Amy Zuckerman ("Zuckerman").

7. Defendant CRI is a Florida corporation with its principal place of business at 15614 Dr. Martin Luther King Jr. Blvd., Dover, Florida 33527. At all relevant times, CRI was a direct competitor of WSS.

8. TIS is a Florida corporation with its principal place of business at 15614 Dr. Martin Luther King Jr. Blvd., Dover, Florida 33527. At all relevant times, TIS was a direct competitor of RSI.

9. Defendant Lauren Zuluaga is the president of TIS, the president of CRI, and a citizen of Florida with a principal place of business at 15614 Dr. Martin Luther King Jr. Blvd., Dover, Florida 33527.

10. Defendant Staci Laird Zuluaga is the vice president of TIS, the director of operations at CRI, and a citizen of Florida with a principal place of business at 15614 Dr. Martin Luther King Jr. Blvd., Dover, Florida 33527.

11. Defendant Keller is a former senior vice president of RSI, a one-third owner of TIS, and a citizen of Indiana.

12. CRI, Lauren Zuluaga, Staci Laird Zuluaga, and Keller are collectively referred to herein as the "Defendants."

**Jurisdiction**

13. Pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), the Court has subject matter jurisdiction because the claims present federal questions.

14. Pursuant to 28 U.S.C. § 1367(a), the Court has supplementary jurisdiction over the state law claims because these claims arise out of the same

operative facts and are so related to the RICO and Robinson-Patman Act claims that they form part of the same case or controversy.

15. The Court has personal jurisdiction over the Defendants because they transacted their affairs in Indiana, conducted business in Indiana, can be found in Indiana or reside in Indiana, and committed unlawful and tortious acts in Indiana. *See, e.g.*, 18 U.S.C. § 1965.

16. This Court's assertion of exercise of personal jurisdiction over Defendants is constitutionally valid pursuant to the principles of specific jurisdiction consistent with the Due Process Clause and Indiana Trial Rule 4.4(A)(1), (2), (3), and (4) in that:

 (a) CRI, conducted business within the state of Indiana;

 (b) Lauren Zuluaga and Staci Laird Zuluaga each secretly paid or caused to be paid the sum of $150,000 to Debra Keller; and

 (c) CRI, Lauren Zuluaga, Staci Laird Zuluaga, and Debra Keller engaged in the unlawful conduct described herein in Indiana.

## Venue

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## Allegations Common to All Counts

**1. General description**

18. RSI provides comprehensive background screening information to a wide range of businesses and employers throughout the United States.

19. At all relevant times, WSS researched and sold public record information to clients throughout the United States, including RSI.

20. The Zuluaga-owned-business TIS is a competitor of RSI

21. The Zuluaga-owned-business CRI is a competitor of WSS.

22. Until April 26, 2019, Keller was a corporate officer of RSI with the title Senior Vice President of Compliance and Vendor Relationships.

23. During her employment with RSI, either alone or in concert with others, Keller devised a scheme in which CRI, the Zuluagas, TIS, Hilborn, and Zuckerman participated and were rewarded for that participation.

24. Defendants and their co-conspirators set out to impair, weaken, and ultimately destroy the business relationship between WSS and RSI by diverting all of RSI's business away from WSS to CRI. Revenue generated by CRI due to this diversion was used in part to make kickback payments to Keller and provide Hilborn and Zuckerman with higher paying jobs at CRI.

25. Keller and her co-conspirators also provided CRI and the Zuluagas with WSS's trade secret information.

26. To achieve the goals of their scheme, including the theft of WSS's trade secrets, Defendants engaged in multiple instances of mail fraud and wire fraud.

**2. Diversion of business to CRI--Wire Fraud**

27. Defendants set in motion a scheme to divert RSI's business away from WSS to CRI.

28. To accomplish their scheme, Defendants sent or caused to be sent multiple false and/or fraudulent email communications denigrating WSS and promoting CRI.

29. Defendants used WSS's prices and other information to give CRI an unfair advantage over WSS in selling public research information to RSI.

30. Defendants did not disclose to RSI's management that CRI was owned and operated by the same people who owned and operated TIS.

31. Keller used two other RSI employees, Hilborn and Zuckerman, to assist in moving RSI's business away from WSS and to CRI. As compensation, Keller proposed to CRI that Hilborn and Zuckerman leave RSI's employ and take jobs with CRI. The plan included Hilborn also working on behalf of TIS "under the radar" to implement Keller's plan to compete with RSI.

32. Defendants concealed Hilborn's participation in the scheme by claiming she was leaving RSI to work for Amazon when, in fact, she had already accepted CRI's job offer.

33. Defendants concealed Zuckerman's participation in the scheme by claiming she was leaving RSI to work in human resources when, in fact, she had already accepted CRI's job offer.

34. In furtherance of the scheme, Staci Laird Zuluaga pretended that the departure of Hilborn and Zuckerman from RSI were "surprising and unexpected."

**3.  Diversion of business to CRI--Mail Fraud**

35. In furtherance of the Defendants' plan, on April 10, 2019, Keller signed an agreement with the Zuluagas whereby the Zuluagas committed to gift Keller a

one-third ownership interest in TIS and make periodic cash payments—denominated a "loan"—totaling $150,000.

36. Keller received the first $25,000 payment from the Zuluagas while still serving as RSI's Senior Vice President.

37. After destroying WSS's business relationship with RSI, diverting RSI's business with WSS to CRI, and stealing WSS's trade secrets, Keller voluntarily resigned from RSI effective April 26, 2019.

38. Payments made to Keller by the Zuluagas were on behalf of themselves and RSI's competitor, TIS.

39. The payments were made via check and sent by mail to Keller.

40. These payments furthered the Defendants' above-described scheme to deprive WSS of its business relationship with RSI, divert revenues to CRI, and denigrate the business reputation of WSS.

**4.  Theft of Trade Secrets**

41. Through the combined efforts of many employees, WSS developed confidential and proprietary pricing structures, business processes, marketing policies, and related materials (collectively "WSS's Trade Secrets"), all of which were and still are intended for the exclusive use of WSS and which qualify as trade secrets under 18 U.S.C. § 1832.

42. WSS invested millions of dollars in designing, developing, improving, and protecting its Trade Secrets.

43. WSS has taken necessary measures to protect and preserve WSS's property rights in, and the confidentiality of, its Trade Secrets.

44. The maintenance of the confidentiality of WSS's Trade Secrets has been at all times a central concern and critical to the continued ability of WSS to compete in the marketplace.

45. During the course of their employment with RSI, one of WSS's most trusted business partners, Keller, Zuckerman, and Hilborn had access to a variety of WSS's Trade Secrets, including but not limited to research methods and pricing structures.

46. Upon information and belief, the Defendants have used and will continue to use WSS's trade secrets to grow CRI's revenues and reward themselves individually.

## Count I: Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO)

47. WSS incorporates by reference all preceding paragraphs to this complaint as if fully set forth herein.

48. The Defendants are each persons within the meaning of 18 U.S.C. § 1961(3). At all relevant times, in violation of 18 U.S.C. § 1962(c), Defendants conduct the affairs of an association-in-fact enterprise as that term is defined in 18 U.S.C. § 1961(4).

49. The enterprise ("Defendants' Enterprise") in this case consisted of the Defendants, an ongoing, continuing group of separate individuals and legal entities associated together in fact, and multiple non-party co-conspirators. Upon information and belief, non-party co-conspirators include Hilborn and Zuckerman but may include other individuals or entities currently unknown to WSS.

50. The Defendants are employed by or associated with the Defendants' Enterprise.

51. The Defendants knowingly associated together as an enterprise for a common purpose of engaging in a particular course of conduct. Specifically, Defendants' Enterprise, and each of the members associated with such enterprise, sought to work together to destroy the relationship between WSS and RSI, divert RSI's business from WSS to CRI, use the diverted funds to finance the continuing conduct of the enterprise, steal trade secret and confidential information, drive down the value of RSI, and weaken or eliminate RSI as a background screening competitor. The ultimate purpose of the Enterprise was to create an illegal shortcut to the success of Defendants' business and personal interests, all to the detriment of WSS and RSI.

52. While the Defendants and their co-conspirators participate in and are part of Defendants' Enterprise, they also exist separately and distinctly from the enterprise.

53. Defendants' Enterprise had an ongoing structure with a framework for carrying out its objectives, and there is a relationship among each of the members and co-conspirators in Defendants' Enterprise. For example, Keller, Hilborn, and Zuckerman maintained their employment relationship with RSI while working together methodically and deceptively to divert revenues to CRI while using WSS's confidential and trade secret information. With the funds diverted from RSI to CRI, the Defendants used those funds to make secret payments to Keller and secretly

employ Hilborn and Zuckerman. In addition, Keller, Hilborn, and Zuckerman provided the Zuluagas, CRI, and TIS with trade secret and confidential information obtained from WSS and RSI.

54. The Defendants' Enterprise had longevity sufficient for the members of Defendants' Enterprise to pursue these purposes. On information and belief, the Defendants' Enterprise engaged in the above-described conduct for at least twelve months.

55. The Defendants conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

56. The racketeering activity engaged in by the Defendants included multiple instances of mail fraud, wire fraud, and theft of trade secrets. These acts constitute a pattern of racketeering activity. The acts are related to each other, pose a threat of continued racketeering activity, and have the same or similar purposes, results, and participants. The acts were not isolated events. Defendants each committed at least two such acts or else aided and abetted in such acts.

57. Defendants devised the above-described scheme and artifice to defraud WSS and RSI, damage or ruin the business reputations of WSS and RSI, and to obtain money by means of false and fraudulent pretenses and representations.

58. For the purpose of executing such scheme and artifice, Defendants transmitted or caused to be transmitted in interstate commerce by wire and/or by mail the above-described false and fraudulent communications regarding WSS.

59. Defendants also caused interstate commerce payments to be made by RSI to CRI when such payments would have been made to WSS but for the Defendants' false and fraudulent representations.

60. Defendants also mailed or caused to be mailed payments to Keller in interstate commerce in exchange for Keller engaging in the false and fraudulent representations.

61. As detailed above, the Defendants used and caused multiple interstate wire and mail communications which traveled from one state to another in order to defraud RSI and harm WSS on multiple occasions

62. The acts described in the preceding paragraphs constituted acts of wire fraud and/or acts of mail fraud as provided in 18 U.S.C. §1341 and 18 U.S.C. §1343.

63. The Defendants' Enterprise engaged in interstate commerce and affected interstate commerce. By way of example, Defendants' Enterprise itself directly engaged in providing or facilitating background research services in interstate commerce, as well as altered the movement of background research services and money in interstate commerce.

64. In addition, Defendants' scheme involved a concerted effort to steal trade secrets from WSS and RSI in violation of 18 U.S.C § 1832. Each of the Defendants stole, copied, received, bought, and/or possessed trade secret information knowing that it was obtained without proper authorization. The Defendants continue to use these trade secrets in their business affairs in interstate commerce.

65. As a direct and proximate result of these violations of 18 U.S.C. 1962(c), WSS has suffered substantial damages, including lost profits.

66. Defendants are jointly and severally liable to WSS for treble damages, together with all costs of this action, plus reasonable attorneys' fees as provided pursuant to 18 U.S.C. § 1964(c).

### Count II: Violation of the Robertson-Patman Act

67. WSS incorporates by reference all preceding paragraphs to this complaint as if fully set forth herein.

68. The Defendants' conduct described above violates the prohibitions against commercial bribery in section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c). Section 2(c) of the Robinson-Patman Act encompasses cases of commercial bribery tending to undermine the fiduciary relationship between buyer and agent.

69. Keller, Hilborn, and Zuckerman, while employed by RSI, received kickbacks in the form of money, salary, and/or stock interests from CRI, TIS, and the Zuluages in exchange for diverting RSI's business away from WSS to CRI.

70. WSS, a direct competitor of CRI, suffered economic damages, injury to business reputation, loss of profits, loss of goodwill, and loss of the value of its business as a result of the illegal conduct of Defendants.

### Count III: Tortious Interference

71. WSS incorporates by reference all preceding paragraphs to this complaint as if fully set forth herein.

72. WSS had a valuable contractual and business relationship with RSI.

73. The Defendants had knowledge of this contractual and business relationship.

74. The Defendants intentionally interfered with this relationship by wrongfully diverting business from WSS to CRI.

75. The Defendants' and their co-conspirators' interference in the mutually beneficial and profitable business relationship between WSS and RSI was malicious, unjustified, and accomplished through wrongful and unlawful means.

76. As a direct and proximate result of the interference described above, WSS suffered injuries, including lost profits.

### Count IV: Unfair Competition

77. WSS incorporates by reference all preceding paragraphs to this complaint as if fully set forth herein.

78. The Defendants and their co-conspirators undertook the foregoing scheme to fraudulently remove WSS as a seller of information to RSI to gain an unfair competitive advantage over WSS and did so in part in exchange for cash payments and higher salaries.

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. Enter joint and several judgments against Defendants in favor of WSS;

B. Enter finding that Defendants' wrongful conduct alleged herein violated the laws set forth above, and an award for all measure of damages, including treble damages, allowable under such laws, in an amount to be determined at trial, plus costs of suit, including reasonable attorney's fees and litigation expenses;

      C.     Grant WSS pre-judgment and post-judgment interest on all damages;

      D.     Grant WSS all such other and further relief as, as the Court deems just and proper, to correct Defendants' unlawful conduct.

## JURY TRIAL DEMAND

Wholesale Screening Solutions, LLC, demands a jury trial on all issues so triable.

              John L. Tate
              John L. Tate, Ky Bar No. 69830
              jtate@stites.com
              **STITES & HARBISON, PLLC**
              400 West Market Street, 18th Flr.
              Louisville, KY 40202
              Telephone: (502) 681-0460

              Douglas B. Bates, Bar No. 16355-10
              Chelsea R. Stanley, Bar No. 32770-22
              cstanley@stites.com
              dbates@stites.com
              **STITES & HARBISON, PLLC**
              323 East Court Avenue
              Jeffersonville, IN  47130
              Telephone:  (812) 282-7566

              COUNSEL FOR WHOLESALE
              SCREENING SOLUTIONS, LLC

203975